AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION<br>AND CELL SITE LOCATION DATA FOR ONE T-MOBILE CELLULAR<br>NUMBER AND SEARCH OF INFORMATION ASSOCIATED WITH THE<br>SAME NUMBER PURSUANT TO RULE 41 AND 18 U.S.C. § 2703 FOR<br>INVESTIGATION OF VIOLATION OF 18 U.S.C. § 2252 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 20-sc-3296 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated by reference). This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B incorporated herein and included as part of the attached Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252 | Activities Relating to Material Involving the Sexual Exploitation of Minors |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.  To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the requested warrant will also function as a register order."  An attorney for the government has certified that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation.  See 18 U.S.C. §§ 3122(b), 3123(b).

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of   30   days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Paul Fisher, Special Agent, Federal Bureau of Investigation

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:   12/22/2020

*Judge's signature*

City and state:   Washington, DC

Zia M. Faruqui U.S. Magistrate Judge

*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original         ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.  20-sc-3296 |
| THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION AND CELL SITE LOCATION DATA FOR ONE T-MOBILE CELLULAR NUMBER AND SEARCH OF INFORMATION ASSOCIATED WITH THE SAME NUMBER PURSUANT TO RULE 41 AND 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 2252 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ New Jersey _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference). This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the attached Affidavit.

**YOU ARE COMMANDED** to execute this warrant on or before _____ January 5, 2021 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Zia M. Faruqui _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  12/22/2020 _____

_____
*Judge's signature*

City and state:     Washington, DC _____     Zia M. Faruqui, U.S. Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  20-sc-3296 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 95
(Rev. 09/12)

# ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

## DELAYED-NOTICE SEARCH WARRANT REPORT

The information on this form should be submitted each time judicial action is taken on an application for a delayed-notice search warrant or for an extension of a delayed-notice period.  See 18 U.S.C. § 3103a(d)(1).
NOTE:   If an extension to the notice period is requested, information will need to be submitted for each extension.

**Please enter the information on this form into the InfoWeb Delayed-Notice Search Warrant Reporting System on the J-Net or into CM/ECF version 6.0 or later, if available.**

For more information, see the Delayed-Notice Search Warrant page on the J-Net.

**1.    Name of Judge:**    Magistrate Judge Zia M. Faruqui                    ( ☐ check if state court judge)

**2.    Federal Judicial District:**    District of Columbia

**3.    Date of Application for Delayed Notice:**    12/22/2020

**4.    Offense (Most Serious) Specified:**

☐ Drugs          ☐ Fraud          ☐ Weapons          ☐ Immigration          ☐ Terrorism
☑ Sex Offenses          ☐ Theft          ☐ Kidnapping          ☐ Tax
☐ Extortion/Racketeering          ☐ Fugitive/Escape/Supervised Release Violation
☐ Other *(specify)*:

**5.    Type of Application:**    ☑ Initial request for delay
☐ Extension of previously authorized delay
*(Number of extensions previously granted:* _____ *)*

**6.    Judicial Action Taken:**    ☐ Denied          ☐ Granted          ☐ Granted as modified

**7.    Case Number (e.g., 'mc' Number) of Warrant:**    ____ : 2020 - sc - 3296
                                                                                                  *office    year      type      number*

**8.    Period of Delay Authorized in This Action (days):**    30

**9.    Preparer's Name:**    Jessica Arco                    **Title:**  Special Assistant United States Attorney
        **Phone number:**    (202) 431-5198                    **Date of report:**  12/22/2020

## ATTACHMENT A-1

### Property to Be Searched

1.      This warrant applies to records and information associated with the cellular device assigned to call number (202) 751-1226, ("**TARGET PHONE NUMBER**"), used by **DONNELL RENARD ROJAS**, whose service provider is T-Mobile ("PROVIDER"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.      Information about the location of the **TARGET PHONE NUMBER** that is within the possession, custody, or control of PROVIDER, including information about the location of the cellular telephone if it is subsequently assigned a different number.

## ATTACHMENT A-2

1. The subject of this investigation is **DONNELL RENARD ROJAS**.

## ATTACHMENT B-1

**I.      Information to Be Disclosed by Provider**

All information about the location of the **TARGET PHONE NUMBER** described in Attachment A for a period of 30 days, during all times day or night.  "Information about the location of the target telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A-1.  It further includes:

-   Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

-   Source and destination telephone numbers:

-   Date, time, and duration of communication; and

-   All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the TARGET PHONE will connect at the beginning and end of each communication.

It also includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the service provider and the Federal Bureau of Investigation.  The pen register / trap and trace device shall be transferable to any change dialed number subsequently assigned to a device bearing the same ESN, IMSI or SIM as the target cell phone; any changed ESN, IMSI or SIM subsequently assigned the same dialed number as the target cell phone; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same

subscriber account as the target cell phone.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of PROVIDER, PROVIDER is required to disclose the Location Information to the government. In addition, PROVIDER must furnish the government all information, facility, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the target telephone on PROVIDER's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The government shall compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.     Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section I.  That information that is within the scope of Section I may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section I and will not further review the information absent an order of the Court.  Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**ATTACHMENT B-2**

**Particular Things to be Seized**

I.     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose to the government the following information pertaining to the Account/**TARGET PHONE NUMBER** listed in Attachment A-1:

   a.  The following information about the customers or subscribers associated with the **TARGET PHONE NUMBER**/Account for the time period April 1, 2020 to May 30, 2020:

   i.   Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records, and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET PHONE NUMBER**/Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

3. all available Mobile Data Session and IPv6 reports and any other location information, including "distance to tower" information or Timing Advance Information or T-Mobile's TrueCall report.

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2252 (Activities Relating to Material Involving the Sexual Exploitation of Minors) involving **ROJAS** during the period April 1, 2020 to May 30, 2020.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the PROVIDER in order to locate the things particularly described in this Warrant.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section I and will not further review the information absent an order of the Court.  Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS</u>

## <u>PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)</u>

I, _____, do hereby attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by T-Mobile, and my official title is _____.  I am a custodian of records for T-Mobile.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of T-Mobile, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.       All records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.       Such records were kept in the ordinary course of a regularly conducted business activity of T-Mobile; and

c.       Such records were made by T-Mobile as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                                           Signature

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION AND CELL SITE LOCATION DATA FOR ONE T-MOBILE CELLULAR NUMBER AND SEARCH OF INFORMATION ASSOCIATED WITH THE SAME NUMBER PURSUANT TO RULE 41 AND 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 2252** | **UNDER SEAL**<br><br>Case No. 20-sc- 3296 |

*Reference:*        *USAO Ref. # 2020R02684; Subject Account(s): (202) 751-1226*

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Paul J. Fisher, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c)(1)(A), and former Chief Judge Hogan's Memorandum Opinion in In the Matter of the Application of the United States for an Order Authorizing the Monitoring of Geolocation and Cell Site Data for a Sprint Spectrum Cell Phone Number ESN, 2006 WL 6217584 at *4 (D.D.C. 2006) (Hogan, C.J.) ("Hogan Opinion"), for information about 1) the prospective location of the cellular telephone assigned call number (202) 751-1226, (hereinafter referred to as the "**TARGET PHONE NUMBER**"), as detailed in Attachment B-1; and 2) historic location data for the **TARGET PHONE NUMBER**, as detailed in Attachment B-2, whose service provider is T-Mobile ("**PROVIDER**"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.  As a provider of

wireless communications service, PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).  A certification by Jessica Arco, an attorney for the government, that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation and Metropolitan Police Department of Washington, DC, Child Exploitation Task Force, is included on the signature page of this affidavit.

3.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since August 2012.  I am currently assigned to a Child Exploitation Task Force.  I completed the FBI Basic Field Training Course in Quantico, Virginia, where I received twenty weeks of training in the investigation of various crimes.  Through my training and experience, as well as through conversations with various law enforcement personnel, I have become familiar with the methods of operation used by people who are involved with offenses involving the sexual exploitation of children.

4.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, my investigation of this case, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.  Unless otherwise specified, all dates set forth below are "on or about" the dates indicated, and all amounts or sums are approximate.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2252 (Activities Relating to Material Involving the Sexual Exploitation of Minors) have been committed by **DONNELL RENARD ROJAS** (herein referred to as "**ROJAS**").  There is also probable cause to believe that the historical location information, as described in Attachment B-2, and that the prospective location information, as described in Attachment B-1, will constitute evidence of these criminal violations.  Moreover, the prospective location information described in Attachment B-1 will provide evidence of where the phone is currently located, and there is probable cause to believe the phone is an instrumentality of the offenses described herein.

6.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).  Furthermore, as detailed below, various acts under investigation occurred within the District of Columbia.  *See* 18 U.S.C. §3237.

## PROBABLE CAUSE

7.      The National Center for Missing and Exploited Children ("NCMEC") is a non-profit 501(c)(3) organization that serves as a national clearinghouse and resource center for

families, victims, private organizations, law enforcement, and the public on missing and sexually

exploited children.  NCMEC operates a CyberTipline ("CT") and Child Victim Identification

program.  Through the CyberTip Line, Internet Service Providers ("ISPs"), Electronic Service

Providers ("ESPs"), and individuals may notify NCMEC about the existence of online child

sexual abuse images.  NCMEC makes information submitted to the CyberTipline and Child

Victim Identification Program available to law enforcement agencies.

8.      On April 30, 2020, staff members from Yahoo, Inc. at Oath Holdings, LLC

(hereafter "OATH") discovered files containing suspected child pornography that had been

transmitted via email using the email account "petyrmopatis@yahoo.com."  OATH provided

NCMEC with the account holder's name, an alternate email address, and a phone number.  The

alternate email address was listed as vmopatis@gmail.com, and the phone number was listed as

202-733-0969.  The files were transmitted via Yahoo Mail on April 29, 2020 at 6:31am (UTC)

using IP address 108.31.72.59.  Yahoo forwarded the media files and this information to

NCMEC on April 30, 2020.  NCMEC issued CT Report Number 71305775 and forwarded the

information to the Northern Virginia Regional Internet Crimes Against Children (ICAC) Task

Force for further investigation.

9.      The Northern Virginia Regional ICAC Task Force served OATH with an

administrative subpoena, requesting the subscriber information and IP logs for the account

petyrmopatis@yahoo.com. Pursuant to this subpoena, OATH provided the following

information: "Petyr Mopatis" was the listed account holder, with the alternate email address

vmopatis@gmail.com, and the associated phone number 202-733-0969.  The account status was

listed as "suspended," and the most recent IP login provided, dated April 29, 2020, was IP

address 108.31.72.59 – the same IP address that was used to send the child pornography via email.

10.     NCMEC utilized an open source IP lookup tool and found that the listed IP address was associated with MCI Communications / Verizon.  Pursuant to an administrative subpoena served upon Verizon by the Northern Virginia Regional ICAC Task Force, Verizon provided the following subscriber information: subscriber **DONNELL ROJAS**; address 750 Burns Street Southeast in Washington, D.C.; email address rojasdonnell@gmail.com; and phone numbers (202) 751-1226 (the **TARGET PHONE NUMBER)** and (202) 575-4499.

11.     The Northern Virginia Regional ICAC Task Force forwarded the information to the D.C. Metropolitan Police Department ICAC Task Force based upon the location of the IP address at the time it was utilized by the account petyrmopatis@yahoo.com to send child pornography via email and the Internet.

12.     The information forwarded by NCMEC and associated with the email address petyrmopatis@yahoo.com contained a total of 42 media files that were viewed in their entirety by Yahoo prior to submitting the CT Report to NCMEC.  The media files included 18 images and 24 GIF[1] files. Four of the media files had been previously identified and categorized as apparent child pornography by NCMEC, and at least one of the GIF files was identified as being part of the widely known "Daisy's Destruction" series.  Your affiant has viewed these files, and the following is a description of some of the content:

13.     image.2-1 / image.10-1 : These images depict a prepubescent female child with duct tape over her mouth, and binding her wrists to her ankles. The child appears to be lying on a

---

[1] A GIF, short for Graphical Interchange Format, is a series of images or soundless video that will loop continuously and does not require anyone to press play.

bed on top of a denim colored shirt or dress, wearing sneakers and underwear that leaves a portion of her genitals or pubic area exposed. Her legs are spread apart and the way the child is positioned and the way the camera is focused, her vagina and pubic area are visible and appear to be the focal point of the image.

14.     image.23-1 / image.30-1 : These images are "GIFS" that depict an adult man inserting his penis into the vagina of a prepubescent female minor. Based upon the child's facial expression, she appears to be in pain and distress.

15.     image.6-1 / image.14-1: These images are "GIFS" that depict a prepubescent female child, lying on her back with her legs spread apart. An adult man is putting his mouth on the child's vagina. The child appears to be nude from the waist down, and the adult man appears to be clothed.

16.     image.18-1 / image.25-1 : These images depict a prepubescent male child, fully nude, with his penis visible to the camera. An adult man is inserting his penis into the child's anus.

17.     image.33-1 / image.41-1 : This is an image with "00:23" in the bottom right corner, suggesting that the image is from a video. The image depicts a prepubescent female child lying with her legs open and her genitals exposed. A substance that appears to be semen can be seen on the child's genitals.

18.     Administrative subpoenas were served upon Google for information associated with the email accounts vmopatis@gmail.com and rojasdonnell@gmail.com. Vmopatis@gmail.com was the listed "alternate email" associated with petyrmopatis@yahoo.com in the original CT Report.

19.     The return for vmopatis@gmail.com listed "Varys Mopatis" as the account holder's name and provided the **TARGET PHONE NUMBER** as the recovery phone number associated with the account.  The recovery email account was listed as rojasdonnell@gmail.com. The services associated with this account were:  Gmail, Web& App Activity, Location History, YouTube, Google Hangouts, Android, and Google Payments.

20.     The return for rojasdonnell@gmail.com listed "Donnell Rojas" as the account holder's name.  The alternate and recovery email was listed as drum_line91@yahoo.com, and the recovery phone number was listed as the **TARGET PHONE NUMBER**.  The services associated with this account are the following: YouTube, iGoogle, Google Services, Google Chrome Sync, Google Hangouts, Gmail, Google Photos, Google Calendar, Google Payments, Android, Google Cloud Print, Location History, Google Maps Engine, Google Maps, Google Drive, Google Play Music, Google My Maps, Google Voice, Web & App Activity, and Google Play.

21.     Using law enforcement only databases, the phone number associated with petyrmopatis@yahoo.com, (202) 733-0969, was found to be associated with AT&T Wireless. An administrative subpoena served upon AT&T wireless showed that this phone number was a prepaid cellular telephone with "Consumer Cellular" listed as the financially liable party.

22.     The **TARGET PHONE NUMBER** was determined to be a T-Mobile phone number.  An administrative subpoena was served upon PROVIDER for subscriber information. The customer name was listed as "Rose Butler," and the billing address was 750 Burns Street Southeast in Washington, D.C.  A law enforcement database search of "Rose Butler" revealed that Rose Butler of 750 Burns Street Southeast, Washington, D.C. was born on August 12, 1932.

In a prior police report, Ms. Butler was reported to be the mother of **ROJAS**'s mother, making her the maternal grandmother of **ROJAS**.

23.     A law enforcement database check of **ROJAS** indicated that he had been arrested for sexually-related offenses in Fairfax, Virginia, to include indecent exposure and general sexual battery.  In an interview following the arrest, **ROJAS** stated that he had exposed himself in public on multiple occasions throughout DC, Maryland, and Virginia.  Additionally, **ROJAS** stated that he had a "pornography addiction," and that he thought "about sex all the time, all the time."  **ROJAS** also reported that he believed that if he did not receive treatment for his addiction, he could see himself becoming more aggressive toward women.  The address listed for **ROJAS** in the Fairfax County Police report is 750 Burns Street Southeast, Washington, DC, and the **TARGET PHONE NUMBER** was listed as **ROJAS**'s cell phone number.

24.     I believe that the digital device associated with the **TARGET PHONE NUMBER**, which, as detailed above is associated with a Yahoo email account that contained child pornography, will contain evidence of the possession, distribution, receipt, and transportation of child pornography.  I therefore believe that a search of the prospective and historical geo-location data of the **TARGET PHONE NUMBER** will assist law enforcement in:  (1) gathering additional evidence about the suspect's whereabouts during time periods relevant to this offense, for venue purposes; (2) developing a pattern of life for the user(s) of the **TARGET PHONE NUMBER** and information regarding the locations previously frequented by the user(s) of the **TARGET PHONE NUMBER** from April 1, 2020 to May 30, 2020, in order to allow law enforcement to conduct a less intrusive method of surveillance on the user of the **TARGET PHONE NUMBER**; (3) locating and seizing the digital device associated with the **TARGET PHONE NUMBER**, which

is anticipated to contain evidence of criminal conduct; and (4) potentially identifying locations where evidence is stored and where search warrants may be appropriate.

25.     Based on my training and experience, I know that electronic devices used to access the internet will have stored data and/or deleted data, that could be recovered using digital forensic tools, that could provide evidence of access to the Yahoo email account such as world wide web address, also referred to as a Universal Resource Locator ("URL"), and files the user of the device may have accessed.

26.     I am requesting 30 days of prospective location data in order to conduct surveillance and execute a search warrant at the location where the device associated with the **TARGET PHONE NUMBER** is stored.  This timeframe also accounts for the possibility that the subject of the investigation may travel for the upcoming holidays.  The requested location data for the **TARGET PHONE NUMBER** will assist in targeting the surveillance that will be conducted in this case and will reduce the risk of being detected and revealing the nature or fact of the investigation.  Your affiant knows, based on my training and experience, that people who are involved in criminal activity are often conscious of being followed and keep a close eye out for surveillance units.  The chance of being discovered increases with the more surveillance that is done and the closer the surveillance units must get to the target subjects.  Use of the GPS/cell-site information enables the investigative team to be more focused and judicious in its use of surveillance to those times when it appears that events of significance are going to occur.  It also enables the investigative team the ability to conduct surveillance at a greater distance, because the fear of losing the target is reduced when surveillance is maintained via GPS/cell-site information.  The prospective location data will be particularly beneficial because **ROJAS**'s residence is located

in a densely populated area, making it difficult for the investigative team to conduct surveillance effectively.

## BACKGROUND ON CELL-SITE DATA AND LOCATION INFORMATION

27.     In my training and experience, I have learned that PROVIDER is a company which provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

28.     Based on my training and experience, I know that PROVIDER can collect E-911 Phase II data about the location of the cellular phone associated with the **TARGET PHONE NUMBER**, including by initiating a signal to determine the location of the Target Cell Phone on PROVIDER's network or with such other reference points as may be reasonably available.

29.     Based on my training and experience, I know that PROVIDER can collect cell-site data about the cellular phone associated with the **TARGET PHONE NUMBER**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30.     Based on my training and experience, I know that PROVIDER also collects per-call measurement data ("PCMD"), also referred to as timing advance or PROVIDER's "TrueCall" report. Timing advance information estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

31.     Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique

identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

32.     Based on my training and experience, I know that wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **the TARGET PHONE NUMBER**'s user or users.

## AUTHORIZATION REQUEST

33.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34.     The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the **TARGET PHONE NUMBER**, without geographic limit, for a period of thirty days (30) days pursuant to 18 U.S.C. § 3123(c)(1).

35.     Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

36. I submit that this affidavit supports probable cause for a warrant to collect the requested information about the location of the cellular phone associated with the **TARGET PHONE NUMBER**, as described in Attachment A, and to seize the evidence described in Attachment B.

Respectfully submitted,

Paul Fisher, Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically pursuant to Fed. R. Crim. P. 4.1 and 41 ( d)(3) on December 22, 2020.

HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA

---

**Attorney Certification Under 18 U.S.C. §§ 3121-3127**

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

JESSICA ARCO  Digitally signed by JESSICA ARCO Date: 2020.12.21 10:39:34 -05'00'

Jessica Arco
Special Assistant United States Attorney
District of Columbia